Good morning, Your Honors, and may it please the Court. Jenny Toma appearing on behalf of Richard Alan Smith, Jr. in his second appeal of the denial of his compassionate release motion, which is now in its fifth year of litigation. Richard Smith was gainfully employed as a coal miner for 18 years until work related health problems forced him out of it. He unfortunately and regretfully developed a bad addiction to crack cocaine, which led to the events in this case. In 2002, Mr. Smith was sentenced to 54 mandatory years in federal prison, half of which was the 25-year stacked 924C sentence on count 46. At his original sentencing, then Judge Stamp noted that his sentence was, quote, severe, which of course it was, but he had no discretion in the matter. This was three years before Booker was decided and the guidelines were mandatory, and of course the 25-year count 46 sentence was required by statute. This was also before Dean was decided, too, so his hands truly were tied. However, whenever Judge Stamp had the opportunity, he reduced Mr. Smith's sentence at each point and he went as low as he could each time. For the guideline amendments in 2008 and again under Section 404 of the First Step Act in 2019, down to 504 months, again, a large bulk of which is still that 25 years on count 46. In the last 25 years, he was taken into custody in 2000, and so in the last quarter century that Mr. Smith has been in federal prison, much has changed for him in that time, legally and personally. In just a few weeks, on June 1st of this year, Mr. Smith will be 71 years old. He has black lung disease from his years as a coal miner, and there is no cure for that. Make a point of the stacking of mandatory minimums, and with the stacking of mandatory minimums, I think it's now forbidden, but it hasn't been ruled retroactive, and if the stacking of the mandatory minimums has not been ruled retroactive, to what degree are we really entitled to consider that under the 3553A factors? This Court's precedent makes pretty clear, starting, I think, with Mangarella and also with Malone, that an extraordinary and compelling circumstance has to be considered as part of the 3553A analysis. It also has to be considered as an extraordinary and compelling reason as Step 1 as well, so at both steps of the inquiry, it does have to be considered when it's raised, which of course here it was. It was a central thesis in mitigation. Congress also provided in 3582C1A that the District Court has to consider an extraordinary and compelling reason that the Sentencing Commission provides for, and now on remand, after the first remand in this appeal, we supplemented to the District Court explaining that the Sentencing Commission . . . So are you saying that retroactivity is no bar . . . It is not a bar, Your Honor. . . . to the consideration of something as a 3553A factor? I think that's correct. I think also the Supreme Court made very clear in conception that when it's raised, something like this has to be considered. So it is not a bar. Of course, it's not also a given that there will be a grant, but it must be considered at both steps of the analysis. Now, just to briefly recap his medical conditions, the damage from black lung disease is irreversible, and part of his right lung has had to have been removed. It shortens his life expectancy by over 12 years. Again, he will be, in just a few weeks, 71 years old. He also suffers from COPD, emphysema, prediabetes, a heart arrhythmia, and a cyst on his liver. Unsurprisingly, he is quite disabled at this point. The question I have is if we were considering this as a matter of the first instance, if we were district judges, I think there would be a good case to be made for compassionate release. But here we are upon appeal, and we are here under an abusive discretion standard. We've made the point many times, the fact that we might have ruled differently as district judges doesn't allow us to traverse on the idea that . . . on the theory that the district judge abused his discretion. There's a difference between what we would have done as district judges and what we're allowed to do as appellate judges under an abusive discretion standard. I'm wondering how you get around that standard of review in this case. In this case, the district court abused its discretion in several ways. Not just the failure to consider the unwarranted sentencing disparities in his account forwarding sentencing, but there was also two factual errors. It attempted to . . . surprisingly, we re-weigh the amount of relevant conduct that was properly found by Judge Stamp at Mr. Smith's original sentencing. That was 573 grams. The district court undertook what I can only assume is maybe understanding that the basis for his decision otherwise might not be enough. He apparently sought to increase the amount that he thought should be attributed to Mr. Smith. That's in contravention of this court's precedent. Most recently in Moody, this court explained that when the sentencing judge, the original sentencing judge, makes an express quantity finding, the court reviewing for compassionate release, his hands are tied. He can't then go back and say, well, I really think it should have been more. That's critically important in this case because the amount of relevant conduct, Judge Stamp took a 15-minute recess at his sentencing and he reviewed the transcripts with the probation officer. Those amounts were based on witness testimony and he was the only judge involved in these proceedings who actually saw those witnesses testify. He made, presumably, a credibility assessment of that testimony. He came back after 15 minutes of consideration and said the correct amount is 573 grams. Now, in this order, the district court said, well, 677, which is what was in the PSR, but also then undertook for a long paragraph to say it should have been a lot more than that. It never quite got around to saying how much more it thought, but apparently it thought it was enough to justify the extra 18 years in part, which is not permissible. There are some exceptions to reconsider an amount on compassionate release or first step back proceedings, but none of those apply here. I understand that Judge Stamp may have been more sympathetic to your case than Judge Klee was, but we're reviewing not what Judge Stamp might have done had he still been on the bench. We're reviewing what Judge Klee did. One thing he does is he makes a big deal of the fact that the original offense was a serious one, that there were large quantities of drugs involved, and that the guns were pointed at law enforcement even though they weren't actually fired. Is it an abuse of discretion given the gravity of the initial offense here? I'm not here to say that any of us should be aspiring to this conduct. Certainly, it was serious, but what it is not serious enough is to sustain ... Basically, what he's saying is that if Mr. Smith came before me today, I would bury up your word 18 years for this. The extra two years for brandishing is already accounted for in the statute. That's why his sentence is 18 years too long and not 20. Moreover, he made two factual errors. He failed to recognize factors constraining it by trying to reweigh the relevant conduct. I also would point out that he talks about the importance of deterrence, and that's irrational because maintaining a sentence on count 46 that is 18 years too long today in no way can deter a would-be armed criminal because those penalties aren't on the table for them today. It has no deterrence value for would-be criminals today. Is this individual still ambulatory? He can walk, but slowly. He has a lot of trouble breathing. He can walk. You said he's missing part of a lung? He is. He is slow in his progress. Does he have emphysema? He does. COPD and emphysema as well. What are the extent of his breathing difficulties? They are significant, Your Honor. He cannot, he can walk, but he gets very exerted. He, at one point, explained that he had to have other inmates accompany him sometimes when he walks from places on the compound. He has, as you can imagine, it is a labor for him to move around. And I would also... The disciplinary record by and large is pretty good. It's among the best I've seen. There were two, two infractions noted for insolence. Were they, did they involve violent conduct of any sort? They did not, Your Honor. It was a name- asked to provide information to the CO, and he declined out of fear that it might involve some retaliation to himself, and he might become the subject of violence. He simply declined to get involved in that. Rightfully so for someone in his condition, I would say. But I would also like to just make the point that failure to consider the 924C disparities, there are three different kinds of disparities that that represents. It's not, that reason, first of all, is not individualized to Mr. Smith at all. And this court in McCoy made very clear that the review must be individualized to the person before the court. That's got nothing to do with him. That's basically a blanket assessment saying, any defendant who comes before me requesting an unstacking or reduction of his 924C sentence, I don't believe in it. I'm not going to do it, even though the Sentencing Commission has made that expressly a ground to consider. And I also just want to point out that the three different kinds of unwarranted sentencing disparities that that reflects include between co-defendants in this case. He had a co-defendant, Roland Whitley, who also very briefly held a gun on the undercover officer who was posing as a drug dealer, or a drug buyer trying to . . . When you were talking here in your brief about the fact that some of the other co-conspirators have already been released . . . All of them have already been released. Okay, all of them have been released, but I think it's 3553A5 or whatever it is where you ask whether the sentence is out of line with something. Haven't we taken the view that that is not out of . . . When we talk about something that's out of line, we're not talking about out of line with respect to another co- defendant. Yeah, I just want to add that the three kinds of sentencing disparities are not just between the co-defendant, but also from the many defendants whose cases we've cited in our briefs who did far worse, whose cases did involve violent conduct. Is it really a 3553A factor that other co-conspirators received a lesser sentence? It is, at minimum, and it's part of the Extraordinary and Compelling Circumstances Inquiry because it is an unwarranted sentencing disparity, and that's in . . . It's 1B1.36. Is the disparity within the particular case, or is the disparity one that's nationwide? It's all of the above, Your Honor, and that is as an Extraordinary and Compelling Circumstance under the policy statement under 3582C1A, it has to be considered both at step one and as part of the 3553A analysis under this court's existing president. But I just also want to reemphasize that this case is unlike any of the others that the government cited in its briefs because the undercover officer who briefly had two of these gentlemen point a gun at him, he attested in writing, he put it in writing, and it's part of the record that he was unharmed physically or emotionally from this incident. This is not a case unlike some of the others cited by my colleague where there's trauma to the individuals. People won't return to work. There's hundreds of thousands of dollars of economic damages. There's harm to the victim. People were killed, maimed, seriously injured. None of that is here. None of that is here. Because of the district court's . . . What is the limiting principle here if normally a reversal for abusive discretion has a much more far-reaching effect than an affirmance? What is the limiting principle here that is going to prevent this case from being thrown up to us in many future cases? What narrowing factors can you cite that will prevent me so I won't be coming back to court and said, wait a minute, you did this, you did this this past year, so and so, and so and so, and so and so, and so and so deserve to be released and having this brought up to all kinds of district courts across the circuit? Because as I say, a reversal for abusive discretion has much more far-reaching effects than an affirmance. What's the limiting principle here in your view? Your Honor, I see my time has expired. No, please answer that. I think that this court doesn't really have to go much farther or even any farther than it has in the past. I think this court's existing precedent makes clear that when you make factual errors, as the district court here made two of them, when you try to re-weigh relevant conduct, when you abuse your discretion in all the ways that we've explained, those are abuses of discretion, and I don't think you have to go any farther than this court's existing precedent to so hold. I think that the factual errors and the other abuses of discretion are enough, and they wouldn't really be a step farther than we have gone in the past. I'm happy to answer any other questions if the court has. Otherwise, reserve the remainder of my time. Well, actually, there's no extra time. Do you have any additional questions? Does she have extra time? I do not. Just my five minutes on rebuttal. No extra, though. Yes, that way you have some rebuttal time here. You certainly do.  Thank you. Mr. Warner. Good morning. I'm Stephen Warner, Assistant U.S. Attorney in the Northern District of West Virginia, stationed at Elkins. May it please the court. Your Honor, it's in the district court's first order, the 2022 order, denying Smith's motion for compassionate release. The district court said that even if it considered anti-stacking in its 3553A analysis, the sentencing factors still weigh against a sentencing reduction because a reduction would be inconsistent when it reflected seriousness of the offense, promote respect for the law, deter criminal conduct, or protect the public. In so finding, the district court leaned on the instant conduct and on the defendant's criminal history. But he didn't consider the rehabilitative issues. You would agree, right? Well, he said that he considered all the defendants. The district court said that it considered all the defendants' arguments and did comment on it was impressed with the rehabilitative efforts. So it did consider and it said that it considered those efforts, yes. But nonetheless found that the 3553A factors weighed against them in denying the motion for compassionate release. It put heavy weight, all of its weight really, into the offense conduct and into the defendant's criminal history. Now this court remanded because there were bad facts in that analysis in the first order in the 2022. The district court wrote that it was over 500 kilograms of crack cocaine. It wasn't. It was really over 500 grams. And it wrote that the defendant's prior conviction was a federal felony when it actually was a state felony. So this court remanded and directed the district court to correct those facts. And then, you know. And you still got it wrong, right? No, no. On the drug weight? Well, yes and no. But yes, but not as much. You're definitely right. The district court took a 15-minute recess. And you can tell, and I knew Judge, that you could tell that he was trying to get as low as he could on the relevant conduct to see whether it would go into the next guideline level. And the district court, I think Judge Stamp said, he could only get it down to 570-some grams, which was about 100 grams less than the pre-sentence report had. And then the district court, in the order that brings us today, found what the pre-sentence report, 677 grams, when the district court had, yes, the trial court had said 500-some grams. Well, let's put it this way. He has spent 25 years in prison. You know, that's a big chunk of a man's lifetime. And the government has conceded here that he's established an extraordinary and compelling circumstance. So he's on that. He's established the first prong for compassionate release. And he seems to be in rather bad shape medically. Did you take issue with opposing counsel's description of his medical conditions? No, I agree with the medical conditions. But that's a person who's in pretty bad shape. So when we talk about recidivism, there's no risk of recidivism here. That's one of the 3553A factors, is it not? It definitely is. Maybe I'm wrong, but this record does not suggest a recidivist to me. And then, in addition, you have to look at deterrence. And it would seem to be a significant deterrent to anyone who's considering Mr. Smith's case that he only received compassionate release if he does, after 25 years in prison. The 25 years that he has spent in prison would appear to be a pretty significant deterrence, would it not? I would agree with that, Judge, yes. You would think twice, if you looked at Mr. Smith's case, that someone has spent 25 years. That would be a deterrent. And you would think twice, looking at his age, that the dangers of recurrence or recidivism had to be very low, particularly in conjunction with the rehabilitative history that Judge Benjamin has mentioned. What I'm saying to you is that this is not your strongest case to hang your hat on. Do you understand what I'm saying? Absolutely, yes, Your Honor, I do. But I respectfully and I respect that different judges would disagree. Maybe many judges would disagree with the district court here. But all that is required for it not to be an abuse of discretion is that the district court knew of the defendant's arguments, considered them, and had a reason, a rational basis for choosing to deny the motion. What are we supposed to do with the fact that this individual has lost part of his lung, that he has been diagnosed with black lung disease, that he has a heart condition, that he has all sorts of pulmonary conditions? I mean, I don't understand what is to be gained from a societal point of view or what is to be gained from a societal point of view in keeping this gentleman in prison after all this time when co-defendants have been released, when we know that if he had been sentenced today, it would have been substantially less. You know, you have to exercise some judgment on this. This is not a strong case for you. Judge, I know that and I respect that. And I can clearly see that different judges would decide differently. But I keep going back and would continue to argue that that abuse of discretion standard, this district judge didn't want to reduce the sentence. And if you follow that abuse of discretion standard, did the district judge, was he aware of the arguments? Did he consider them? Yes, he did. And did he have a rational basis for denying them? I would argue that he did. In his second, you know, 20 more recent order that brings us here today, he was very concerned with the brandishing of firearms, that this man's crime involved eight firearms, one had an obliterated serial number. Those are all fair points. And, you know, I respect you for them because they're certainly all valid points and all legitimate points. But this seems to me a sort of an extraordinary situation where you have somebody who's infirm and aged and has spent 25 years in jail and would, by general admission, his co-defendants have long been set free. He would have been sentenced far more leniently had he been sentenced today than at the time. The fact that he's in prison now, he's sort of a victim of timing in the kind of way. But it just seems to me that if there is a case for compassionate release, this would seem to be it. Well, I would respectfully agree that some judges would agree with that statement. Some district judges might have granted compassionate release. This one did not. And we argued against it. I know that, Your Honor. But I do. We thought it was important the district judge saw both sides and make a ruling after hearing both arguments. But I just go back to and argue that abuse of discretion when this judge didn't want to grant release. He was aware of the arguments. He knew what they were. He looked at the instant offense conduct, and he did not want to grant relief. And I would just urge and argue that that was not abusive of him to not reduce this sentence. I respect that. Those arguments that customarily have great appeal to me, but I have to look at the facts here. The man is missing part of his lung. He's 70 years old. He's no danger to society. Whatever years of life he has left, why not give him a chance? Thank you, sir. Yeah, thank you, Judge. Thank you, Your Honor. I do want to take a couple points of disagreement with my friend here. First of all, I don't think the district court was considering the disparities in his 924C sentence. It's JA-366 where it says, even if the court were to consider it, and I think the only real way to interpret that is that he was not. I also think that the district court's 3553A analysis at JA-363, 366, if you read that, you see basically several pages of just adding details about Mr. Smith's offense conduct and his 1992 West Virginia conviction for selling $60 worth of marijuana and a misdemeanor domestic violence conviction, and otherwise just talks for pages about his conduct in this case, which, again, was serious, but not an extra 18 years serious. And so you would see in that only one thing mentioned is just basically making it dispositive, his conduct in this case and his criminal history. You see at the end of that a half sentence of just one passing mention of his 25 years of positive rehabilitative conduct in the Bureau of Prisons, and this court has vacated and remanded for that sort of situation before in Gutierrez, citing Martin, which is also in our briefs. So that passing comment, you see the district court . . . I tend to agree with Your Honor. There's no prohibition on us granting compassionate release here. There is not, and there is also a precedent for that as well, and we certainly would welcome that result from Your Honors. Anything more? I think that is the substance of it, Your Honors. I mean, of course, the relief we've requested is at minimum a vacate and remand to a different judge, but we also, in the alternative, would welcome the court's just reversal with instructions to grant, and, again, happy to answer any other questions the court may have. Otherwise, we'll rest. Judge. Thank you, Your Honors. We thank you both, and we'll adjourn court and come down and reconvene. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you for your DOI. Judge, it's an honor. It's a pleasure. Pleasure. I'm honored to be here. Honor is welcome. And honored to be here. Thank you. Great seeing you. Thank you, Your Honor. Any questions? And you dealing with the acoustics, or anything like that? The acoustics or something.
judges: J. Harvie Wilkinson III, Roger L. Gregory, DeAndrea Gist Benjamin